# EXHIBIT A

| | |
|---|---|
| District Court, Denver County, Colorado<br>1437 Bannock Street<br>Denver, Colorado 80202<br>(720) 865-8301 | DATE FILED: November 13, 2020 2:42 PM<br>FILING ID: CB0FDD18E04B6<br>CASE NUMBER: 2020CV33867 |
| STEPHEN GORSHOW<br><br>　　　Plaintiff,<br>v.<br><br>EQHEALTH SOLUTIONS; INDIVDUAL<br>DEFENDANT, GLEN J. GOLEMI; INDIVIDUAL<br>DEFENDANT, DR. RON RITCHEY; INDIVIDUAL<br>DEFENDANT, HEATHER WICKER; INDIVIDUAL<br>DEFENDANT, CHRISTINE GATLIN; INDIVIDUAL<br>DEFENDANT, KATHERINE DENNEY; INDIVIDUAL<br>DEFENDANT, KATRINA FEYINTOLA; INDIVIDUAL<br>DEFENDANT, JOHN DOE AND INDIVIDUAL<br>DEFENDANT, JANE DOE.<br><br>　　　Defendants. | ▲ Court Use Only ▲ |
| *Attorney for Plaintiff:*<br>Offices of John W. McKendree,<br>Lawyer and Consultant<br>John W. McKendree, #1209<br>1287 S. 8th Ave., I-172<br>Brighton, CO 80601<br>Phone Number:　(303) 618-8780<br>E-mail: jwm@mckendreelaw.com | Case Number:<br><br>Div:<br><br>Crtrm: |
| **VERIFIED COMPLAINT AND JURY DEMAND** | |

Plaintiff, STEPHEN GORSHOW, M.D., FACP, by and through his attorney of record,

John W. McKendree, OFFICES OF JOHN W. McKENDREE, LAWYER AND

CONSULTANT, hereby respectfully submits this VERIFIED COMPLAINT AND JURY

DEMAND and alleges and avers as follows:

## JURISDICTION, VENUE and PARTIES

1.　　　Jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C. § 1331 and

28 U.S.C. § 1983, as well as the First, Fourth, Fifth and Fourteenth Amendments to the United

States Constitution, based upon the fact that Defendant conducts and transacts business within the State of Colorado, the events which give rise to this Verified Complaint and Jury Demand occurred within the State of Colorado, and Plaintiff suffered injuries, damages and losses as a result of Defendant's unlawful and discriminatory conduct as alleged herein, in the State of Colorado.

2.      Venue is appropriate in the District Court, County of Denver, State of Colorado, based on the fact that Plaintiff was employed and performed his duties within the State of Colorado, and Defendant's illegal actions, as alleged herein, were committed within the State of Colorado.

3.      Plaintiff, Stephen Gorshow, M.D., FACP [Hereafter, "Plaintiff" and/or "Dr. Gorshow", formerly employed by eQHealth Solutions, is a resident of the State of Colorado, and currently resides at 11570 East Dorado Avenue, Englewood, Colorado 80111.

4.      Defendant eQHealth Solutions [Hereafter, "Defendant EQHS"], is a health care quality improvement, utilization management and health information technology organization, headquartered in Baton Rouge, Louisiana, doing business in multiple cities throughout the United States, specifically including, their Colorado Division located at 303 East 17th Avenue, Suite 325, Denver, CO  80203.

5.      Individual Defendant, Glen J. Golemi [Hereafter, "Individual Defendant, Golemi"] at all times material, was the Chief Executive Officer for Defendant EQHS and performed duties for the State of Colorado.

6.      Individual Defendant, Dr. Ron Ritchey [Hereafter, "Individual Defendant, Dr. Ritchey"], at all times material, was the Chief Medical Officer for Defendant EQHS and performed duties for the State of Colorado.

7.     Individual Defendant, Heather Wicker [Hereafter, "Individual Defendant, Wicker"], at all times material, held the title of State Director, Colorado Government Operations for Defendant EQHS and performed duties for the State of Colorado.

8.     Individual Defendant, Christine Gatlin, PhD, MHA, RN, [Hereafter, "Individual Defendant, Gatlin"] at all times material held the title of Vice President of Human Capital for Defendant EQHS and performed duties for the State of Colorado.

9.     Colorado Department of Health Care Policy and Financing  [Hereafter, "HCPF"], oversees and operates Health First Colorado (Colorado's Medicaid Program), Child Health Plan Plus (CHP+), and other public health care programs for Coloradans who qualify; and office out of 1570 Grant Street Denver, CO 80203-1818; Phone: (303) 866-2993.

10.     At all times material, Individual Defendant, Katherine Denney [Hereafter, "Individual Defendant Denney"] was the Contract Team Lead for the Utilization Management (UM) Program, HCPF; and executed her job duties for HCPF in the State of Colorado at 1570 Grant Street Denver, CO 80203-1818.

11.     At all times material, Individual Defendant, Katrina Feyintola [Hereafter, "Individual Defendant Feyintola"] was the UM Contract Manager for the Utilization Management (UM) Program, HCPF; and executed her job duties for HCPF in the State of Colorado at 1570 Grant Street Denver, CO 80203-1818.

12.     At all times material, Individual Defendants John Doe and Jane Doe, maliciously acted in their individual capacity and executed their respective job duties for HCPF at 1570 Grant Street Denver, CO 80203-1818, and intentionally interfered with rights of the Plaintiff; Plaintiff requests Leave to amend this Verified Complaint and Jury Demand once their identities are known.

13.     Plaintiff's Claims are for Harassment and Disability Discrimination in Violation of the Americans with Disabilities Act (ADA) 42 U.S.C. § 12101; Disability Discrimination in Violation of the Colorado Anti-Discrimination Act, C.R.S. 24-34-401 *et seq*.; Wrongful Harassment Resulting in Forced Termination in Violation of the Public Policy of the State of Colorado; Conspiracy; Promissory Estoppel; Unlawful Interference in Violation of §1983; and for Violation of Plaintiff's Rights under the First, Fifth and Fourteenth Amendments to the United States Constitution.

## **GENERAL ALLEGATIONS**

14.     Plaintiff incorporates herein by reference each and every allegation contained in ¶¶1-13 of this Verified Complaint and Jury Demand.

15.     Plaintiff has been diagnosed with Ménière's Disease[1] and is therefore disabled and a protected member under the Americas with Disabilities Act (ADA).

16.     Plaintiff has been diagnosed with Ménière's Disease and is therefore disabled and a protected member under the Colorado Anti-Discrimination Act (CADA).

17.     Plaintiff was diagnosed with Ménière's Disease [Hereafter, "disability"] in 2002-2003, although he has not, and did not allow this diagnosis to preclude him from working; and has continuously and successfully held employment throughout the past 17 plus years.

18.     In 2013-2014, Plaintiff's disability began to worsen as the hearing in both of his ears deteriorated severely.

19.     In June 2014, Plaintiff was fortunate enough to receive a cochlear implant in his right ear, which literally saved his life and resulted in his ability to continue working as a

---

[1] A chronic and rare disorder of the inner ear that causes episodes of severe vertigo, tinnitus, and hearing impairment which gradually or sometimes, suddenly worsens over time.

Physician Executive without interruption, despite persistent impairment in hearing, constant tinnitus and periodic episodes of prolonged, severe vertigo.

20.     Although able to perform his job duties, as a result of his disability, the Plaintiff did continue to have significant difficulty understanding conversation in situations with increased background noise, or any decrease in sound quality, such as telephonic conversations with individuals using speaker phones.

21.     On or about March 6, 2017, Plaintiff began his employment with Defendant EQHS, as the Senior Medical Director.

22.     The Plaintiff performed his duties for Defendant EQHS, who, at all times material, held a contract with HCPF, for the State-Wide Medicaid Program.

23.     The Plaintiff's primary duties, performed in EQHS' Colorado office, were to review cases for propriety and medical necessity under Medicaid, advise EQHS and HCPF on these issues, and testify in Hearings relating to Medical Necessity Denials before State Administrative Law Judges.

24.     Defendant EQHS, at all times material, had a contract with HCPF to perform utilization reviews for Medicaid Beneficiaries, including Prospective Reviews, Retrospective Reviews, and Medical Necessity Reviews, utilizing nationally recognized evidence based on Prior Authorization Request (PAR) review criteria; under the contract, HCPF had to approve all senior level EQHS positions in the State.

25.      Plaintiff notified Defendant EQHS about his hearing impairment when he was hired in March 2017; this notification included direct communications both with Individual Defendant, Gatlin, and Individual Defendant, Golemi of Defendant EQHS.

26.     Thereafter, in August 2017, the Plaintiff contacted Individual Defendant, Golemi regarding the cochlear implant which the Plaintiff had implanted in 2014; the Plaintiff indicated that he had Meniere's Disease which had taken away approximately 80% of his hearing, but described the implant as a "life-changing medical miracle" which addressed his hearing loss and allowed him to lead a productive life at work, and a meaningful life with his family.

27.     Although Plaintiff's prior cochlear implant surgery had been covered by his prior employer, the Plaintiff discussed with Individual Defendant, Golemi, the need and necessity of a replacement external processor, which was required for the cochlear implant to continue working.

28.     At the time, Defendant EQHS' health plan excluded coverage for cochlear implants for adults, and the Plaintiff requested that EQHS, remove the exclusion. Individual Defendant, Golemi responded that they had just moved from a fully-insured health plan to a partially self-funded plan and that he would look into the process for removing an exclusion.

29.     A few days later, Individual Defendant, Golemi informed the Plaintiff that he had authorized Defendant EQHS' Human Resources to cover the cochlear implant as a one-time exception to the plan's exclusion, based on the Plaintiff's pre-existing circumstances.

30.     Thereafter, as time went on, the Plaintiff began to work with officials and employees of HCPF, and they too, became aware of Plaintiff's disability; specifically, Ms. Joey Gallegos, who at all times material was an Appeals Representative of HCPF.

31.     In or about November 2018, the Plaintiff began working with Individual Defendant, Feyintola[2], of HCPF in addition to Individual Defendant Denney and others from HCPF, on matters dealing with Appeals Hearings.

---

[2] At this time, Individual Defendant Feyintola took over Individual Defendant Denney's position as Um Contract Director, and Individual Defendant Denny became a UM Contract Lead.

32.     In December, 2018, the Individual Defendants of HCPF alleged that the Plaintiff "refused" to perform his "assigned duty" as he was directed to unlawfully make false statements under oath in Court at the direction of HCPF officials, designed to obfuscate the real reason for the denials, which was an unwritten HCPF policy to deny a specific medical service to a specific class of Medicaid recipients[3].

33.     As a consequence of the Plaintiff's refusal, Officials of HCPF were dismayed that the Plaintiff refused to commit perjury at their direction in order to protect officials of HCPF from having to reveal the truth; thereafter, Individual Defendants of HCPF began their unlawful quest to discredit the Plaintiff's performance and professional competence, which actions were motivated by personal animus and maliciously motivated to intentionally harm the Plaintiff.

34.     A review of Plaintiff's employment history with Defendant EQHS, will reveal that he had no record of disciplinary action regarding his performance or competence; in fact, he was awarded a salary increase in March, 2019.

35.     In addition to the Plaintiff's heavy caseload of testifying on behalf of HCPF at Medicaid Appeal Hearings, the number of Physician Case Reviews that were assigned in early 2019 up through August 2019, will evidence that the volume had tripled from 300 per month to 900 per month.

36.     The tripling of Case Reviews in addition to the Plaintiff's other assignments caused the Plaintiff considerable stress and an intensification of his disability symptoms, working 12-hour days and on weekends, attempting to handle the volume of work placed upon him.

---

[3] The incident described matured on December 6, 2018, over the issue of Continuous Glucose Monitors (CGM); when the Plaintiff refused to testify that the denial occurred because CGMs were not medically necessary for adults when in fact they were.

37.     In addition, and due to his competence, knowledge and experience, the Plaintiff was assigned and devoted many hours to training and mentoring another Physician who began working for Defendant EQHS in mid-April, 2019.

38.     Moreover, in late 2018- early 2019, there were newly hired HCPF employees who acted in their individual capacity for individual motives and, maliciously made false reports of and concerning the Plaintiff's performance and competence and/or therefore misconstrued the Plaintiff's comprehension and competency during conference calls.

39.     At this time, the maliciously false and unlawful reports made by Individual Defendants of HCPF were not revealed to the Plaintiff, and therefore, the Plaintiff was unaware of any allegedly claimed performance or competence issues.

40.     In July of 2019, Individual Defendant, Wicker, pretextually alerted Defendant EQHS' corporate office that the Plaintiff's performance had been declining over a several-month period; concerns about the Plaintiff's performance were discussed in secret; derogatory and defamatory statements were uttered and published, not only by Defendant EQHS officials and employees, but also by multiple individuals of HCPF, with the absence of any attempt to find the root cause in order to find resolution, and acting with malice towards the Plaintiff.

41.     On September 19, 2019, the Plaintiff was contacted by Individual Defendant, Ritchey, who stated he would be making an "unfriendly visit"; when the Plaintiff inquired of Individual Defendant, Wicker, if she had any knowledge of and concerning complaints or issues dealing with his performance or any knowledge of and concerning this visit, Individual Defendant, Wicker malevolently denied any knowledge.

42.     Likewise, on September 19, 2019, the Plaintiff inquired of his immediate supervisor, Ms. Duckworth, if she had any knowledge of and concerning complaints from HCPF,

to which she responded, she did not know[4] and that she would contact Individual Defendant Golemi.

43.     Each of these Individual Defendants of HCPF, unlawfully and conspiratorially communicated with the Individual Defendants of EQHS, and together, these Individual Defendants uttered and published their unlawful and pretextual "concerns" that, among other issues, the Plaintiff's performance was "substandard and unacceptable"; subjecting the Plaintiff to ridicule, humiliation, intimidation and insult; subsequently altering the conditions of his employment and creating a hostile working environment.

44.     Instead of bringing these concerns to the Plaintiff in order to provide him with due process, Individual Defendants, acting in their individual capacity and with their own personal malice and animus, began to pretextually compile an exaggerated list of what they deemed to be "concerns" regarding the Plaintiff's performance and competency issues.

45.     Included in the performance concerns were falsely alleged issues relating to the Plaintiff's "productivity, forgetfulness, inability to use systems he had previously used, and avoidance of cases."

46.     Upon information and belief, the Plaintiff later understood that the discriminatory and maliciously motivated statements uttered and published by the Individual Defendants of HCPF and EQHS, commenced approximately in February, 2019, without Plaintiff's knowledge or opportunity to set the record straight and with a malicious pretextual motivation.

47.     As a result of each of the Individual Defendants of HCPF's, unlawful and maliciously discriminatory reports to Defendant EQHS, the Individual Defendants of EQHS

---

[4] Demonstrating that the Individual Defendants had no intention of providing the Plaintiff with Due Process by allowing his Supervisor to voice the concerns in order for there to be an understanding of why these alleged performance issues were suddenly occurring.

began to conspire by discriminatorily and pretextually collecting detrimental information about the Plaintiff's performance; speaking to the Plaintiff's co-workers and Individual Defendants of HCPF without his knowledge and without taking the Plaintiff's disability or workload into consideration or providing Plaintiff the opportunity to give evidence of the entire truth of the matter.

48.    During this time wherein information was being collected from Individual Defendants of EQHS and Individual Defendants of HCPF, no one from Defendant EQHS or HCPF contacted the Plaintiff regarding any complaints or concerns regarding his performance or competence, nor did they take into account, the Plaintiff's disability or provide him due process or accommodation; curiously, the alleged performance issues of the Plaintiff were not sufficiently severe as to cause a direction for him to cease working for several months.

49.    By their actions, involving secret conspiratorial communications by the Individual Defendants, with multiple employees of both Defendant EQHS and HCPF, regarding negative perceptions of the Plaintiff, the Individual Defendants of EQHS and HCPF undoubtedly caused rumors to circulate among Plaintiff's associates about his "decreased competence"; as a result of these discriminatory and malicious actions, an unlawful hostile work environment was created and magnified awareness among his associates of every minor error the Plaintiff may have made.

50.    Thereafter, Individual Defendants, Ritchey, Gatlin and Golemi of EQHS, motivated by personal animus and maliciously motivated to harm the Plaintiff, conspiratorially determined that the Plaintiff would need to be removed from the HCPF interactions and duties due to HCPF's "dissatisfaction with his services," despite Individual Defendant, Ritchey, Gatlin and Individual Defendant, Golem's knowledge of the Plaintiff's disability.

51.     As noted above and for reasons unknown to the Plaintiff, the discriminatory complaints of and concerning him, were allegedly investigated in secret and not brought to his attention until September 27, 2019, wherein Individual Defendant, Ritchey, notified the Plaintiff that there were some complaints about his performance during conference calls, and that they were going to remove him from all activities involving contact with and related to HCPF.

52.     The Plaintiff informed Individual Defendant, Ritchey that he attributed the pretextual comments and complaints to his hearing disability; and at that time, it seemed that Individual Defendant, Ritchey was unaware of the nature or severity of Plaintiff's hearing impairment despite his communications with Individual Defendants, Gatlin's and Golem's knowledge of the Plaintiff's disability and the Plaintiff's years of professional service.

53.     Plaintiff explicitly requested that accommodations be made to enable him to hear the conference calls more clearly, in order to be given the opportunity to correct the concerns and discriminatory and pretextual allegations of Individual Defendants of HCPF and Individual Defendants of EQHS.

54.     In response to an inquiry from the Plaintiff, Individual Defendant, Ritchey stated that he did not know if Individual Defendant, Denney knew about the Plaintiff's hearing impairment.

55.     Plaintiff also informed Individual Defendant, Ritchey that he worked very closely with Ms. Joey Gallegos, an HCPF employee, on Appeals during the entire two and a half years he had worked at Defendant EQHS; Ms. Gallegos was responsible for conducting the frequent Medicaid Appeals Hearings at which Plaintiff testified, and had a much broader and more detailed exposure to Plaintiff's competence outside of the weekly 30-minute conference calls. Moreover, this HCPF employee attended all of these weekly conference calls. Plaintiff requested

that Individual Defendant, Ritchey speak with this employee in order to get a more balanced view of his performance and competency; Individual Defendant, Ritchey promised that he would do so.

56.     Individual Defendant, Ritchey also promised that he would speak with Individual Defendant, Denney, to inform her of Plaintiff's disability and its attribution to the complaints in order to get her to reconsider the discriminatory demand for Plaintiff's immediate removal from contact with HCPF.

57.     Individual Defendant, Ritchey further promised Plaintiff that he would receive reasonable accommodations regarding his severe hearing disability.

58.     In a meeting on or about October 9, 2019, Individual Defendant, Ritchey stated to Plaintiff that in the period since the preceding meeting (September 27, 2019), he spoke with Individual Defendant, Denney at HCPF and informed her "for the very first time" about the Plaintiff's hearing impairment.

59.     Individual Defendant, Ritchey notified the Plaintiff that Individual Defendant, Denney discriminatorily stated that, "this new information did not matter and did not change HCPF's position", demonstrating Individual Defendant, Denny's personal animus and intentional and improper interference with the Plaintiff's contractual relationship with Defendant EQHS.

60.     Individual Defendants of HCPF's actions are particularly egregious regarding their refusal to take Plaintiff's disability into consideration, given their stated policy and commitment to provide "auxiliary aids" to individuals with disabilities including hearing impairment, whom interact with the Department.[5]

---

[5]   "Auxiliary Aids and Services for Individuals with Disabilities," available on the HCPF web site at:
https://www.colorado.gov/pacific/sites/default/files/HCPF Auxiliary Aids and Services Policy and Procedure.pdf

61.     Individual Defendant, Ritchey also stated that he asked Individual Defendant, Denney for contact information for the employee named by Plaintiff who had much more interaction with the Plaintiff than any of the HCPF individuals who complained about conduct at conference calls; Individual Defendant, Ritchey said Individual Defendant, Denney declined to give him the requested information and that he never spoke with this employee as Plaintiff had requested.

62.     On or about October 14, 2019, following Defendant EQHS's discussions with Individual Defendants of HCPF, the Plaintiff received a correspondence, in summary giving him the Hobson's choice to take a demotion from his Senior Medical Director position along with a salary decrease or, to resign; furthermore, the correspondence was absent of any offer concerning accommodation for the Plaintiff's disability, whatsoever.

63.     Moreover, the Plaintiff was unlawfully and discriminatorily told by Individual Defendant, Ritchey, that accommodations would be offered only if the Plaintiff agreed to the demotion and salary decrease.

64.     The adverse employment actions which were discriminatorily and conspiratorially taken against the Plaintiff due to the unlawful and maliciously motivated complaints and decisions made by Defendant EQHS and the Individual Defendants of HCPF, were pretextual, unlawful and displayed personal animus and unlawful conduct, and for those reasons among others, the Plaintiff was unwilling to accept the pretextual and discriminatory alternative role or the meager severance offer in return for his resignation; the Plaintiff has never, and did not have any present intention of resigning.

65.     Consequently, despite requests made by Plaintiff's counsel to Defendant EQHS's counsel, there was no formal notice of Plaintiff's separation from employment.

66.     Furthermore, officials of Defendant EQHS failed to follow its Employee Guide to Human Resources Policies & Procedures, Chapter 5, concerning its Progressive Discipline Policy and Performance/Behavior Improvement provisions.

67.     Plaintiff received his final direct deposit from Defendant EQHS on October 25, 2019; the final payment received, paired with Defendant EQHS's failure to communicate a return to work date, led Plaintiff to conclude that he had been wrongfully and constructively discharged.

68.     The conspiratorial actions and unlawful decisions made by Individual Defendants of EQHS and Individual Defendants of HCPF, diminished his anticipatory reliance of his contractual relationship, directly resulting in the Plaintiff's constructive discharge, and their discriminatory and defamatory statements about the Plaintiff's ability to perform his job as a Senior Medical Director have severely damaged his reputation and ability to secure future employment both in the private sector and with any government agency at a comparable or higher level of salary and rank as he previously held.

69.     Additionally, Individual Defendants Ritchey, Gatlin and Golemi, of EQHS stated they had "no other choice" as they "had an obligation to be responsive to their client's [HCPF] stated concerns and to accommodate them" as they are Defendant EQHS's client.

70.     Plaintiff served his Notice of Intent to Sue upon William V. Allen First Assistant Attorney General, Litigation Section, Office of the Attorney General in compliance with the Governmental Immunity Act, on or about December 3, 2019.

71.     Plaintiff, filed his Charge of Discrimination with the Equal Employment Opportunity Commission and received his Notice of Right to Sue dated October 1, 2020.

**PLAINTIFF'S FIRST CLAIM FOR RELIEF**
**Disability Discrimination in Violation of the Americans with Disabilities Act**
**(ADA) 42 U.S.C. § 12101**

72.     Plaintiff incorporates herein by reference each and every allegation contained in ¶¶ 1 - 71 of this Verified Complaint and Jury Demand.

73.     Plaintiff has been diagnosed with Ménière's Disease and is therefore disabled and a protected member under the Americas with Disabilities Act (ADA).

74.     Defendant EQHS took adverse employment action against the Plaintiff with respect to his compensation, terms, conditions, and privileges of employment, ultimately resulting in his wrongful termination which, but for his disability, would not have taken place.

75.     Individual Defendants made the discriminatory decision to limit and segregate the Plaintiff from performing certain duties in a way which deprived the Plaintiff of employment opportunities, adversely affecting his status as an employee, which, but for his disability, would not have taken place.

76.     Individual Defendants of EQHS failed to issue the Plaintiff with progressive discipline and due process and made the discriminatory decision to offer the Plaintiff a demotion with a wage reduction or in the alternative, the Plaintiff could resign from his position.

77.     Individual Defendants of EQHS and HCPF, intentionally and maliciously discriminated against the Plaintiff when they subjected him to differential treatment based on his protected statuses.

78.     As a direct and proximal result of Defendants' intentional disability discrimination, Plaintiff suffers and continues to suffer injury including, but not limited to, severe emotional distress, mental anguish, physical pain and suffering, psychological and emotional pain and suffering, including psychological damage.

79.     As a direct and proximal result of Defendants' intentional disability discrimination conduct, Plaintiff also suffers pecuniary losses including, but not limited to, lost wages, future lost wages and benefits, diminished opportunities for career advancement, damage to his reputation and damage to his re-employment opportunities; and for such other and further relief as the Court deems just.

### PLAINTIFF'S SECOND CLAIM FOR RELIEF
**Disability Discrimination in Violation of the Colorado Anti-Discrimination Act, C.R.S. 24-34-401 *et seq*.**

80.     Plaintiff incorporates herein by reference each and every allegation contained in ¶¶ 1 - 79 of this Verified Complaint and Jury Demand.

81.     Plaintiff has been diagnosed with Ménière's Disease and is therefore disabled and a protected member under the CADA.

82.     The Individual Defendants of HCPF and EQHS were aware or should have reasonably been aware of the Plaintiff's Disability.

83.     The Individual Defendants pretextually and secretly compiled a list of concerns regarding the Plaintiff's performance and competence with total disregard to his disability.

84.     The Individual Defendants subjected the Plaintiff to adverse employment action, ultimately resulting in his wrongful termination on the basis of his disability.

85.     The Individual Defendants discriminatorily and unlawfully refused to provide accomodations to the known physical/mental limitations of the Plaintiff, a qualified individual, in order to address the concerns of EQHS and HCPF, unless he accepted a less desirable position with a wage decrease.

86.     The Individual Defendants knowingly discriminated against the Plaintiff on the basis of his disability when they made the decision to sever his contact and job duties with HCPF

after having knowledge of his disability, stating that, "this new information did not matter and did not change HCPF's position" which, but for his disability, would not have occurred.

87.     As a direct and proximal result of Defendants' intentional disability discrimination, Plaintiff suffers and continues to suffer injury including, but not limited to, severe emotional distress, mental anguish, physical pain and suffering, psychological and emotional pain and suffering, including psychological damage.

88.     As a direct and proximal result of Defendants' intentional disability discrimination conduct, Plaintiff also suffers pecuniary losses including, but not limited to, lost wages, future lost wages and benefits, diminished opportunities for career advancement, damage to his reputation and damage to her re-employment opportunities; and for such other and further relief as the Court deems just.

**PLAINTIFF'S THIRD CLAIM FOR RELIEF**
**Unlawful Interference with an Existing Contract and with Prospective Economic**
**Advantage in Violation of §1983.**

89.     Plaintiff incorporates herein by reference each and every allegation contained in ¶¶ 1 - 88 of this Verified Complaint and Jury Demand.

90.     Plaintiff had a contract of employment with Defendant EQHS, who at all times material, had a contract with HCPF to perform utilization reviews for Medicaid beneficiaries, including prospective reviews, retrospective reviews, and medical necessity reviews, utilizing nationally recognized evidence based prior authorization request (PAR) review criteria; under the contract, HCPF had to approve all senior level EQHS positions in the State.

91.     Individual Defendants of HCPF had knowledge of the Plaintiff's contractual relationship with Defendant EQHS.

92.    Individual Defendants of HCPF maliciously began to pretextually gather and exaggerate derogatory and misleading information of and concerning the Plaintiff's performance and competence after his disagreement and refusal to perform unlawful and violative acts at the direction of Individual Defendants of HCPF and EQHS; all of which were pretextual and directly attributed to his disability.

93.    Individual Defendants of HCPF intentionally and by wrongful and discriminatory means, interfered with the Plaintiff's contract relationship with Defendant EQHS, depriving him of his rights and causing him harm.

94.    The Plaintiff had a business relationship with Defendant EQHS which was severed due to the unlawful and intentional actions of Individual Defendants of HCPF, specifically, Individual Defendant, Denney's discriminatory statement when she became aware of the Plaintiff's disability, that, "this new information did not matter and did not change HCPF's position."

95.    Acting under their own personal animus and with the intention to harm, the Individual Defendants of HCPF's intentional interference involved improper conduct when they caused for the Plaintiff to be subjected to adverse employment action on the basis of his disability and for his refusal to perform unlawful acts.

96.    The Plaintiff's anticipatory reliance upon his contractual relationship with Defendant EQHS, its revenues and other benefits of his employment along with future career opportunities was diminished, which would not have not occurred but for the Individual Defendants' intentional and improper interference.

97.    As a direct and proximal result of the Individual Defendants of HCPF's, intentional and improper interference with the Plaintiff's contractual relationship and with

prospective economic advantage, Plaintiff suffers and continues to suffer injury including, but not limited to, severe emotional distress, mental anguish, physical pain and suffering, psychological and emotional pain and suffering, including psychological damage.

98.     As a direct and proximal result of Individual Defendants of HCPF's, intentional and improper interference with the Plaintiff's contractual relationship and with prospective economic advantage, Plaintiff also suffers pecuniary losses including, but not limited to, lost wages, future lost wages and benefits, diminished opportunities for career advancement, damage to his reputation and damage to his re-employment opportunities; and for such other and further relief as the Court deems just.

### PLAINTIFF'S FOURTH CLAIM FOR RELIEF
**Wrongful Harassment Resulting in Forced Termination in Violation of the Public Policy of the State of Colorado**

99.     Plaintiff incorporates herein by reference each and every allegation contained in ¶¶ 1 - 98 of this Verified Complaint and Jury Demand.

100.     The Plaintiff suffered adverse employment action after refusing to perform unlawful directives given by Individual Defendants of EQHS and HCPF, in violation of public interest.

101.     The Plaintiff suffered adverse employment action after reporting his disagreement and refusal to perform unlawful directives given to him by Individual Defendants of HCPF and EQHS regarding violations of statute, policies, procedures and public interest.

102.     Thereafter, Individual Defendants of HCPF and EQHS secretly conspired to gather derogatory, exaggerated and misleading information of and concerning the Plaintiff and masked their motivation to discriminate against the Plaintiff based on his protected activity, in an

intentional attempt to improperly interfere with Plaintiff's contractual relationship, which ultimately resulted in the Plaintiff's wrongful termination.

103.    As a direct and proximal result of the Individual Defendants' intentional and improper conspiratorial conduct ultimately resulting in Plaintiff's wrongful termination,  the Plaintiff suffers and continues to suffer injury including, but not limited to, severe emotional distress, mental anguish, physical pain and suffering, psychological and emotional pain and suffering, including psychological damage.

104.    As a direct and proximal result of Individual Defendants 'intentional and improper conspiratorial conduct ultimately resulting in Plaintiff's wrongful termination, Plaintiff also suffers pecuniary losses including, but not limited to, lost wages, future lost wages and benefits, diminished opportunities for career advancement, damage to his reputation and damage to her re-employment opportunities; and for such other and further relief as the Court deems just.

**PLAINTIFF'S FIFTH CLAIM FOR RELIEF**
**Promissory Estoppel**

105.    Plaintiff incorporates herein by reference each and every allegation contained in ¶¶ 1 - 104 of this Verified Complaint and Jury Demand.

106.    The Plaintiff reasonably relied on the presence of promises unambiguous to the terms and conditions of his employment and future intention with Defendant EQHS.

107.    Defendant EQHS should have reasonably expected the Plaintiff to rely on its promises upon the Plaintiff's hiring date as the Senior Medical Director for Defendant EQHS.

108.     Defendant EQHS acted on the promise, to the Plaintiff's detriment, resulting in Plaintiff's unlawful and discriminatory discharge.

109.    Defendant EQHS, motivated by malice, acted in bad faith when they secretly conspired to discriminate against the Plaintiff and compile derogatory and misleading

information of and concerning his performance and competence; marginalized the Plaintiff's

protected activity and disability, all while neglecting to provide the Plaintiff with

accommodation and due process. All of which resulted in a hostile working environment,

detriment to his reputation, and the final act of stripping away the Plaintiff's employment status

and the reasonably relied upon promises therein and the promises must be enforced to prevent

injustice.

110.    As a direct and proximal result of Defendant EQHS' conduct, the Plaintiff

suffers and continues to suffer injury including, but not limited to, severe emotional distress,

mental anguish, physical pain and suffering, psychological and emotional pain and suffering,

including psychological damage.

111.    As a direct and proximal result of Defendant EQHS' conduct, Plaintiff also

suffers pecuniary losses including, but not limited to, lost wages, future lost wages and benefits,

diminished opportunities for career advancement, damage to his reputation and damage to his re-

employment opportunities; and for such other and further relief as the Court deems just.

### PLAINTIFF'S SIXTH CLAIM FOR RELIEF
#### Conspiracy

112.    Plaintiff incorporates herein by reference each and every allegation contained in

¶¶ 1 - 111 of this Verified Complaint and Jury Demand.

113.    Plaintiff had a contract of employment with Defendant EQHS, who at all times

material, had a contract with HCPF to perform utilization reviews for Medicaid beneficiaries,

including prospective reviews, retrospective reviews, and medical necessity reviews, utilizing

nationally recognized evidence based prior authorization request (PAR) review criteria; under

the contract, HCPF had to approve all senior level EQHS positions in the State.

114.     Individual Defendants of HCPF and EQHS had knowledge of the Plaintiff's contractual relationship with Defendant EQHS.

115.     Individual Defendants of HCPF and EQHS began to pretextually gather and exaggerate derogatory and misleading information of and concerning the Plaintiff's performance and competence after his disagreement and refusal to perform unlawful and violative acts at the direction of Individual Defendants of HCPF and EQHS; all of which were pretextual and directly attributed to his disability, in a conspiratorial effort to rid the Plaintiff of his employment.

116.     Individual Defendants of HCPF and EQHS, acting outside of their scope of employment, intentionally and by conspiratorial means, interfered with the Plaintiff's contract relationship with Defendant EQHS, depriving him of his rights and causing him harm.

117.     The Plaintiff had a business relationship with Defendant EQHS which was severed due to the unlawful and conspiratorial actions of Individual Defendants of HCPF and EQHS, specifically, Individual Defendant, Denney's discriminatory statement when she became aware of the Plaintiff's disability, that, "this new information did not matter and did not change HCPF's position."

118.     Acting under their own personal animus and with the intention to harm, the Individual Defendants of HCPF and EQHS's conspiratorial interference involved improper conduct when they caused for the Plaintiff to be subjected to adverse employment action on the basis his disability and engagement in protected activity.

119.     By engaging in conspiratorial conduct outside of their scope of employment, and demanding the Plaintiff be removed from working with HCPF, Individual Defendants of HCPF and EQHS acted in violation of their obligations to the Corporations and law.

120.    As a direct and proximal result of the Individual Defendants of HCPF and

EQHS's, conspiratorial conduct, Plaintiff suffers and continues to suffer injury including, but not

limited to, severe emotional distress, mental anguish, physical pain and suffering, psychological

and emotional pain and suffering, including psychological damage.

121.    As a direct and proximal result of Individual Defendants of HCPF and EQHS's,

conspiratorial conduct, Plaintiff also suffers pecuniary losses including, but not limited to, lost

wages, future lost wages and benefits, diminished opportunities for career advancement, damage

to his reputation and damage to his re-employment opportunities; and for such other and further

relief as the Court deems just.

**PLAINTIFF'S SEVENTH CLAIM FOR RELIEF**
**Violation of Plaintiff's Rights under the First, Fifth and Fourteenth Amendments to**
**the United States Constitution.**

122.    Plaintiff incorporates herein by reference each and every allegation contained in

¶¶ 1 - 121 of this Verified Complaint and Jury Demand.

123.    The ethics of the Plaintiff's profession and the legal requirements, including the

Hippocratic Oath and the lawful requirements to ensure that all evidence presented in Appellate

Judicial or Quasi-Judicial proceedings be truthful, are protected by the First, Fifth and Fourteenth

Amendments to the United States Constitution.

124.    The unlawful actions described in this Verified Complaint and Jury Demand were

designed, intended and maliciously motivated to violate these constitutional protections of the

Plaintiff.

125.    The Plaintiff was subjected to adverse employment action and interference with

his contract of employment after exercising his rights and expressing his refusal to perform

unlawful acts at the direction of Individual Defendants of HCPF.

126.    Individual Defendants of HCPF and EQHS failed to afford the Plaintiff with his right to due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution.

127.    As a direct and proximal result of the Individual Defendants unconstitutional acts, Plaintiff suffers and continues to suffer injury including, but not limited to, severe emotional distress, mental anguish, physical pain and suffering, psychological and emotional pain and suffering, including psychological damage.

128.    As a direct and proximal result of Individual Defendants unconstitutional acts, Plaintiff also suffers pecuniary losses including, but not limited to, lost wages, future lost wages and benefits, diminished opportunities for career advancement, damage to his reputation and damage to her re-employment opportunities; and for such other and further relief as the Court deems just.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court enter Judgment in his favor and against the Defendant as follows:

(a)    On Plaintiff's First Claim for Relief for Disability Discrimination in Violation of the Americans with Disabilities Act (ADA) 42 U.S.C. § 12101; in an amount to be determined at trial;

(b)    On Plaintiff's Second Claim for Relief for Disability Discrimination in Violation of the Colorado Anti-Discrimination Act, C.R.S. 24-34-401, *et seq*, in an amount to be determined at trial;

(c)     On Plaintiff's Third Claim for Relief for Unlawful Interference with an Existing Contract and with Prospective Economic Advantage in Violation of §1983, in an amount to be determined at trial;

(d)     On the Plaintiff's Fourth Claim for Relief for Wrongful Harassment Resulting in Forced Termination in Violation of the Public Policy of the State of Colorado, in an amount to be determined at trial;

(e)     On the Plaintiff's Fifth Claim for Relief for Promissory Estoppel, in an amount to be determined at trial;

(f)     On Plaintiff's Sixth Claim for Relief for Conspiracy, in an amount to be determined at trial; and,

(e)     On Plaintiff's Seventh Claim for Relief for Violation of Plaintiff's Rights under the First, Fifth and Fourteenth Amendments to the United States Constitution, in an amount to be determined at trial.

## **JURY DEMAND**

Plaintiff, Stephen Gorshow, respectfully demands a Trial by Jury on all issues presented herein.

Respectfully submitted this 13th day of November 2020.

> *s/s John W. McKendree*
> John W, McKendree, #1209
> OFFICES OF JOHN W. McKENDREE,
> LAWYER & CONSULTANT
> 1287 S. 8th Ave, I-172
> Brighton, CO 80601
> (303) 618-8780
> jwm@mckendreelaw.com

In accordance with C.R.C.P. 121§ 1-26(7), a printed copy of this document with original signatures is maintained by the filing part and will be made available for inspection by other parties or the Court upon request.

**Plaintiff's Address:  11570 E. Dorado Ave., Englewood, CO 80111**

## VERIFICATION

**STATE OF COLORADO**                            )

                                                 ) s/s

**CITY AND COUNTY OF** Arapahoe          )

    I, Stephen Gorshow, have had this Verified Complaint and Jury Demand read aloud to me, and I certify that the information contained herein is true and correct and to the best of my knowledge, information and belief.

                    s/ _____

                    Stephen Gorshow, Plaintiff

Subscribed and sworn to before me this _13_ day of November, 2020, by Stephen Gorshow.

Witness my hand and official seal.        s/ _____

                    Notary Public

My Commission Expires: 06/09/2024        {{SEAL}}

> DYLAN BARTLE
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 2020402037
> MY COMMISSION EXPIRES JUNE 9, 2024