**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-3687-WJM-KLM

STEPHEN GORSHOW,

      Plaintiff,

v.

EQHEALTH SOLUTIONS,
INDIVIDUAL DEFENDANT GLEN J. GOLEMI,
INDIVIDUAL DEFENDANT DR. RON RITCHEY,
INDIVIDUAL DEFENDANT HEATHER WICKER,
INDIVIDUAL DEFENDANT CHRISTINE GATLIN,
INDIVIDUAL DEFENDANT KATHERINE DENNEY,
INDIVIDUAL DEFENDANT KATRINA FEYINTOLA, and
INDIVIDUAL DEFENDANT JANE DOE,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

      This matter is before the Court on eQHealth Solutions ("EQHS"), Dr. Ron Ritchey, Heather Wicker, Christine Gatlin, and Glen Golemi's (collectively, "EQHS Defendants") Motion for Summary Judgment ("Motion"), in which they request that the Court enter judgment in their favor on all claims asserted against them.  (ECF No. 59.)

      Plaintiff Stephen Gorshow brings five claims against the EQHS Defendants: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* against EQHS; (2) wrongful termination in violation of Colorado public policy against the EQHS Defendants; (3) promissory estoppel against EQHS; and (4) conspiracy against EQHS Defendants.  (ECF No. 28 at 15–21.)

For the reasons set forth below, the Motion is granted in part and denied in part.

## I. BACKGROUND[1]

### A.     Plaintiff's Employment and Disability

This action arises out of Plaintiff's employment with EQHS, "a population health management company."  (ECF No. 59 ¶ 1.)  EQHS has a contract with the Colorado Department of Health Care Policy and Financing ("HCPF"), which administers Colorado's Medicaid program.  (*Id.* ¶¶ 2–3.)  The contract requires EQHS to perform utilization reviews for Medicaid beneficiaries.  (*Id.*)

On March 6, 2017, Plaintiff began his employment with EQHS as a Senior Medical Director.  (*Id.* ¶ 11.)  In that role, Plaintiff performed Medicaid utilization reviews, which involved testifying on behalf of HCPF at Medicaid appeal hearings.  (*Id.* ¶ 67.)  Plaintiff was employed by EQHS, not HCPF; however, EQHS required the approval of HCPF before it hired any Senior Medical Director.  (*Id.* ¶ 12.)

Plaintiff has had a hearing impairment since 2002 and has worn a cochlear implant since 2014.  (*Id.* ¶ 82.)  Plaintiff's hearing impairment was well-known to employees of EQHS and HCPF because they observed his cochlear implant or because Plaintiff had disclosed his impairment to them.  (*Id.* ¶ 84.)  EQHS knew about Plaintiff's disability at the time he was hired.  (*Id.*)

Individuals at EQHS and HCPF made efforts, whenever Plaintiff requested, to assist him by repeating, clarifying, or explaining items Plaintiff believed he missed

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

because of his hearing impairment.[2]  (*Id*. ¶ 87.)  Plaintiff admits there were times when he had performance deficits because of symptoms related to his hearing, but when those occurred, he did not notify the individuals at HCPF or EQHS that these deficits were in any way related to his hearing because he did not want to "make a fuss."  (*Id*. ¶ 90.)

## B.   Events Leading to Adverse Employment Action

On December 6, 2018, HCPF officials directed Plaintiff to testify at a hearing that a certain medical device, a Continuous Glucose Monitor, was not medically necessary for adults.  (ECF No. 61-2 at 6; ECF No. 59 ¶ 103.)  Plaintiff refused HCPF's demand because, according to him, this assertion was untrue.  (ECF No. 61-2 at 5.)  Plaintiff alleges that as a result his refusal to testify, HCPF began an "unlawful quest to discredit the Plaintiff's performance and professional competence."  (ECF No. 28 ¶ 32.)

In July 2019, Katherine Denney, an employee of HCPF, raised concerns to Wicker regarding Plaintiff's job performance as observed by her and another HCPF employee, Katrina Feyintola.  (ECF No. 59 ¶¶ 21, 24–26.)  Specifically, Denney told Wicker that on appeals calls Plaintiff was forgetful, disorganized, and that he sometimes mixed-up cases.  (*Id*. ¶ 26.)  Additionally, EQHS staff members informed Wicker of concerns about Plaintiff's performance citing his history of "mis-documentation in client records, which constituted a potential HIPAA violation."  (*Id*. ¶ 27.)

Wicker notified her supervisor, Vicky Ducworth, who then notified Dr. Ritchey and requested that he participate in investigating the complaints about Plaintiff's

---

[2] Plaintiff made these requests at appeals hearings but not at appeals meetings.  (ECF No. 59 ¶ 88.)  Plaintiff felt embarrassed about making these requests at meetings and did not feel safe doing so; however, he never spoke to anyone at EQHS about these feelings.  (*Id*.)

performance.  (*Id*. ¶¶ 28, 30.)  Wicker also notified Gatlin, who requested she provide

specific examples of Plaintiff's unsatisfactory performance.  (*Id*. ¶¶ 31–32.)  On August

3, 2019, Wicker provided to Ducworth, Gatlin, and Dr. Ritchey the following examples:

> Cross charting in member files resulting in incorrect
> information being sent on denial letters[;]
>
> Frequent forgetfulness on how to handle processes in PURS
> [software program] including special handling line items at
> recons, capabilities available at unlock (items he was
> previously able to perform)[;]
>
> Push back on UM Manager and Supervisor for cases that
> were previously hand[led] administratively, but direction has
> been given from the Department that a medical necessity
> review is needed[;]
>
> Review completion post submission to MES [company which
> engages contract physicians for various specialties] for
> review—recently completed a review and did not remember
> requesting that it be sent to MES[;]
>
> Cross review submission to MES, resulting in 1st PR review
> going to MES[;]
>
> HCPF (State of Colorado) has mentioned issues with lack of
> organization during appeal meetings as well as confusing
> cases being reviewed with other cases[.]

(*Id*. ¶ 33.)

On August 19, 2019, Gatlin, Dr. Ritchey, Wicker, and Ducworth had a meeting to

discuss Plaintiff's performance issues.  (*Id*. ¶ 34.)  At the conclusion of the August 19,

2019, meeting, Dr. Ritchey requested that Wicker set up a call between himself and the

appropriate representative of HCPF, and he asked Wicker to send him the names of the

HCPF personnel and EQHS personnel who had complained of issues with Plaintiff's

performance.  (*Id*. ¶ 39.)  Dr. Ritchey considered Plaintiff's alleged errors to be "serious

errors," especially cross-charting (putting data from one patient into the incorrect

patient's chart).  (*Id*. ¶ 41.)  He was especially concerned because Plaintiff had "a very senior, very high position in the [HCPF] contract that is highly visible to the client," and Plaintiff's "responsibilities include making critical medical clinical decisions that can impact Medicaid beneficiaries in Colorado and potentially result in harm."  (*Id*.)

Per EQHS's request for documentation of HCPF's specific concerns with Plaintiff's performance, Denney requested the staff at HCPF compile a list of specific concerns.  (*Id*. ¶ 42.)  She created a document outlining HCPF staff's observations, which included specific complaints that: (1) on February 26, 2019, Plaintiff was called to offer his opinion about a case and did not respond for some time, and when he did respond he apologized and explained that he "daydreaming I guess;" (2) on March 12, 2019, Plaintiff forgot to prepare for one of the cases under review; (3) on April 16, 2019, he confused the cases that were under review with one another; and (4) in meetings throughout the summer of 2019, he regularly cited inaccurate gender, ages, and diagnoses in reviewing cases, and even refused to review some cases outright.  (*Id*. ¶ 43.)

On September 17, 2019, Denney had a meeting with Dr. Ritchey, and told him:

> [She] had general [and specific] issues that she had identified with interactions with [Plaintiff].  The general issues were concerns of performance during the appeals process in which cases were mixed up, confused, and that there was confusion in validating the individual's gender, age, and diagnosis.  She indicated that this happens with regularity.
>
> She also indicated that while the agendas for these appeals discussions were available the week prior to the appeals hearing, [Plaintiff] did not review the cases in a number of instances.
>
> . . . .
>
> There were other instances during April, where, during the

meetings, [Plaintiff] was discussing the wrong case and . . . confused the case of a three-year-old with the case of a 67-year-old and had to interrupt the discussion to ask questions regarding which patient was being addressed.

And he jumped ahead of the queue of patients to other individuals that were not under discussion at the time, and there were inaccuracies and references to gender, age, diagnosis, and prognosis of patients.

In addition, Ms. Denney indicated that she felt she could not rely upon the expertise of [Plaintiff] where, in the past, she had been confident of his capabilities and knowledge.

She further indicated that [Plaintiff] had become defensive when asked to give further details about a medical decision of his when the decision was not being questioned, but the client simply wanted to clarify the details of a case.

. . . . .

Ms. Denney expressed concern the medical decisions at the time were made on the basis of personality rather than objective decisions based on clinical data and clinical guidelines. She also indicated that other outside individuals who were not named, but who functioned, apparently, as client advocates, had communicated to her that Dr. Gorshow either did not understand the rules and regulations of Colorado Medicaid or was not explaining those rules and regulations adequately.

[Dr. Ritchey] asked Ms. Denney if she had, in her opinion, seen an increased frequency of those issues, and she responded that the issued appeared to be developing with greater frequency and regularity.

(*Id.* ¶ 46.)

On September 19, 2019, Dr. Ritchey met with Gatlin and Golemi and discussed the information he had learned from HCPF. (*Id.* ¶ 48.) They decided Dr. Ritchey should travel to Colorado to meet with Plaintiff to discover the source of the issues and hopefully resolve them. (*Id.* ¶ 50.)

Dr. Ritchey and Plaintiff met on September 27, 2019, at EQHS's Denver office

regarding Plaintiff's performance.  (*Id*. ¶ 53.)  During the meeting, Plaintiff raised the

issue of his hearing impairment as a potential explanation for some of the performance

concerns, and Dr. Ritchey encouraged him to consult his physician to evaluate the

possibility and see if accommodations were needed.  (*Id*. ¶ 91.)  Plaintiff never

suggested accommodations to EQHS and never communicated with his doctor related

to accommodations for his hearing in September or October of 2019.  (*Id*. ¶ 92.)

On September 30, 2019, Dr. Ritchey held a conference call between himself,

Golemi, and Ducworth to discuss his meeting with Plaintiff.  (*Id*. ¶ 60.)  Dr. Ritchey

presented his assessment that Plaintiff should no longer serve as Senior Medical

Director on the HCPF contract, and he explained his recommendation was because

HCPF expressed a lack of confidence in Plaintiff's ability to serve in his role.  (*Id*. ¶¶ 61–

62.)  Dr. Ritchey concluded that Plaintiff's continued employment as Senior Medical

Director represented a threat to the HCPF contract and represented a potential threat to

beneficiaries of Medicaid in Colorado because EQHS had evidence from multiple

people indicating that Plaintiff's performance was not up to standard.  (*Id*. ¶ 63.)

On October 7, 2019, Dr. Ritchey had a follow up call with Denney to see if

Plaintiff's hearing impairment explained Plaintiff's performance issues.  (*Id*. ¶ 65.)

Denney told Dr. Ritchey that when she submitted complaints to EQHS, she attempted to

exclude complaints that related to Plaintiff's hearing deficiencies.  (*Id*. ¶ 66.)

Shortly thereafter, Gatlin, Ritchey, and Golemi met, reviewed Plaintiff's job

description, and decided Plaintiff could no longer adequately perform his role as Senior

Medical Director; specifically, they determined that he could not adequately perform his

duties at appeals hearings.  (*Id*. ¶ 67.)  In reviewing the job functions Plaintiff could no

longer adequately perform, they determined that any proposed change in role would have to entail a proportionate change in compensation.  (*Id.*)

At the conclusion of the meeting, they decided to present two options to Plaintiff.  (*Id*. ¶ 68.)  The first option was that EQHS reduce his responsibilities, "change his title, and reduce his salary by 20 percent commensurate with dropping his workload 20 percent."  (*Id*.)  The second option was that he retire or resign with "[a] severance package to include three months' worth of pay."  (*Id*.)

## C.   Adverse Employment Action

On October 9, 2019, Dr. Ritchey and Plaintiff had another meeting.  (*Id*. ¶ 72.)  Dr. Ritchey told Plaintiff he had followed up with Denney, and she indicated that Plaintiff's hearing impairment did not explain all of the issues with his performance.  (*Id*. ¶ 73.)  Then Dr. Ritchey told Plaintiff that he had met with Golemi and they had decided that Plaintiff was no longer able to adequately perform his role as Senior Medical Director.  (*Id*.)  Dr. Ritchey then presented Plaintiff with the two options of a change in role or resignation.  (*Id*.)  Plaintiff responded by offering a counterproposal of a three-month period of probation, with a 10% compensation reduction.  (*Id*.)

On October 11, 2019, Dr. Ritchey and Plaintiff spoke by phone.  (*Id*. ¶ 78.)  Dr. Ritchey told him that his request for probation with a 10% compensation reduction was declined by EQHS's senior leadership, and Dr. Ritchey again presented Plaintiff with the choice between a change in role or resignation.  (*Id*. ¶ 78.)  He requested Plaintiff respond no later than October 15, 2019.  (*Id*.)

On October 14, 2019, Gatlin sent Plaintiff a letter outlining Plaintiff's two options which had been previously presented by Dr. Ritchey.  (*Id*. ¶ 79.)  That same day, on October 14, 2019, Plaintiff packed his belongings at EQHS and left his company laptop

and access card on his desk.  (*Id*. ¶ 80.)  Plaintiff did not perform work for EQHS again. (*Id*.)

On March 19, 2020, Plaintiff filed his Charge of Discrimination with the U.S. Equal Employment Opportunity Commission.  (ECF No. 61 at 4.)  Plaintiff initiated this action in Colorado state court on November 13, 2020.  (ECF No. 1-2.)  Defendants removed the action on September 4, 2020.  (ECF No. 1.)  Plaintiff filed his Amended Complaint on January 15, 2021, which is the operative complaint.  (ECF No. 17.)

EQHS Defendants filed the instant Motion on October 15, 2021.  (ECF No. 59.) On November 4, 2021, Plaintiff filed a response (ECF No. 61), to which EQHS Defendants replied on November 17, 2021 (ECF No. 63).

## II. DENFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.    STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to the proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the

Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita*, 475 U.S. at 586–587).

**B.    ANALYSIS**

        1.    Federal Claim

First, the Court considers Plaintiff's sole federal claim, an ADA discrimination claim brought against EQHS. The ADA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must show that (1) he is disabled as defined under the ADA; (2) he is qualified, with or without reasonable accommodation by the employer, to perform the essential functions of the job; and (3) he was discriminated against because of his disability. *See Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016) (citing *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015)).

"A plaintiff who seeks to prove that an employer discriminated against him or her can use either direct or circumstantial evidence." *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 620 (10th Cir.1994)). Here, Plaintiff does not argue that there is direct evidence of discrimination, therefore he must prove discrimination by indirect or circumstantial evidence, in which case the claim is analyzed under the *McDonnell Douglas* burden-shifting test. *See id* at 1137 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)).

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of employment discrimination.  *Id*.  A successfully established prima facie case creates a presumption of discrimination, and the burden then shifts to the defendant to rebut that presumption by asserting a facially legitimate, non-discriminatory basis for its employment decisions.  *Id*.  If the defendant does so, the burden shifts back to the plaintiff to offer evidence that plaintiff's disability was a determinative factor in the employment decision or that defendant's non-discriminatory reason was merely pretext for discrimination.  *Id*.

For the purposes of this Motion only, the Court assumes *arguendo* that Plaintiff has met his prima facie burden.  Next, the burden shifts to EQHS to come forward with a legitimate, nondiscriminatory basis for Plaintiff's termination.  EQHS has presented evidence showing that Plaintiff was terminated for poor performance.  (ECF No. 59 at 34.)  The Court finds that this explanation is a legitimate, non-discriminatory basis for Plaintiff's termination.

Accordingly, the burden shifts back to Plaintiff to show that the proffered bases are a pretext for discrimination.  *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003).  In order to establish a genuine issue of material fact as to pretext, a plaintiff must produce evidence that would allow a reasonable juror to find that the defendant's non-discriminatory reason is "unworthy of belief."  *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).  A plaintiff can meet this burden with "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Argo v. Blue Cross and Blue Shield of*

*Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (quotation omitted). In determining whether a plaintiff has shown pretext, the Court must consider the plaintiff's evidence in its totality. *Orr v. City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008)

Plaintiff argues that there are genuine issues of material fact regarding whether EQHS's reason for the adverse employment action was pretextual. First, Plaintiff argues EQHS's proffered legitimate reasons are pretextual because the investigation of Plaintiff's performance issues was not thorough. (ECF No. 61 at 30.) Specifically, Plaintiff points out that the complaints made by HCPF employees were "worded in the plural," using phrases such as "regularly" and "sometimes." (*Id.*)

Plaintiff's argument fails for two reasons. First, Plaintiff does not cite any case law to support his argument that an employer acts pretextually when it bases its actions on non-specific complaints. Second, even if there were legal precedent favorable to Plaintiff on this issue, the undisputed facts show that there were indeed many specific instances of conduct on which EQHS based its decision. For example, EQHS considered that: (1) on February 26, 2019, Plaintiff was called to offer his opinion about a case and did not respond for some time, when he did respond, he apologized and explained that he "daydreaming I guess;" (2) on March 12, 2019, Plaintiff forgot to prepare for one of the cases under review; (3) on April 16, 2019, he confused the cases that were under review with one another; and (4) in meetings throughout the summer of 2019, he regularly cited inaccurate gender, ages, and diagnoses in reviewing cases, and even refused to review some cases outright. (ECF No. 59 ¶ 43.)

Under Tenth Circuit precedent, an attack on the adequacy of the investigation as a means of showing pretext requires plaintiff to present evidence of a "disturbing

procedural irregularity," *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1122 (10th Cir. 2007), often exemplified by an employer's "falsifying or manipulating of relevant criteria," *Plotke v. White,* 405 F.3d 1092, 1104 (10th Cir. 2005). Plaintiff argument that EQHS's investigation was inadequate falls far short of this standard.

Next, Plaintiff argues that EQHS's investigation was pretextual because by September 9, 2019, EQHS had already decided to demote Plaintiff. (ECF No. 61 at 33.) To support his argument, Plaintiff cites an internal document from HCPF records containing a conversation between HCPF employees. (ECF No. 59-16.) In the document, Kunal Bhat states that several HCPF employees "agree to move forward with [EQHS's] decision to replace Dr. Gorshow with Dr. F." (*Id*. at 3.) The statement is dated September 9, 2019, which is before the conclusion of EQHS's investigation. (*Id*.) Plaintiff argues that this statement shows that EQHS's investigation is a "sham," and the result was a foregone conclusion. (ECF No. 61 at 33.) Thus, Plaintiff argues, the reasons for EQHS's adverse employment was pretextual. (*Id*.)

The Court is not persuaded by Plaintiff's argument. First, the document at issue was an internal *HCPF* record, and Plaintiff has produced no evidence to support an inference that *EQHS* was aware of Bhat's statement. Further, Plaintiff has produced no evidence about the basis for Bhat's belief that could support an inference that EQHS shared his belief. The relevant question here is whether EQHS honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017). Bhat's statement is relevant to *his* belief, but without additional facts, Bhat's belief is irrelevant to whether EQHS honestly believed its proffered reasons for its actions.

Moreover, Plaintiff can meet his burden regarding pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Rivera v. City & Cnty. of Denver,* 365 F.3d 912, 925 (10th Cir. 2004).  Here, EQHS received complaints from an important client about the performance of Plaintiff in an essential role.  EQHS thereafter investigated those complaints and found them to be substantiated.

EQHS gave Plaintiff an opportunity to explain his performance issues.  When Plaintiff was asked about reports of him cross-charting, he responded that he believed that issue to be due to increase in the volume of cases.  (ECF No. 61 ¶ 56.)  When Plaintiff was asked about complaints that he was not proficient in the software the company used, he claimed there were faults in the system, and that there are things it cannot do.  (*Id*.)  With regard to complaints that he appeared confused about the process of referral to outside review organizations and that he had forgotten referrals, Plaintiff responded, "It could have happened."  When asked about reports of confusion about spreadsheets, not reviewing cases, and discussing the incorrect case, Plaintiff said that stress played a big role in those issues.

And when Plaintiff raised the issue of his hearing impairment as a potential explanation for some of the performance concerns, EQHS encouraged him to consult his physician to see if accommodations were needed.  (ECF No. 59 ¶ 91.)  But Plaintiff never suggested the need for an accommodation to EQHS, and he never communicated with his doctor regarding a possible accommodation for his hearing

impairment.  (*Id*. ¶ 92.)

After concluding its investigation, EQHS decided that Plaintiff was not adequately performing his duties as Senior Medical Director.  Based on the record in this case, the Court finds that Plaintiff cannot show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *Rivera,* 365 F.3d at 925.  Thus, Plaintiff has failed to show any factual dispute as to whether EQHS's proffered bases for his termination were pretextual.  As such, his ADA claim cannot survive summary judgment.  *Proctor v. United Parcel Service*, 502 F.3d 1200, 1211 (10th Cir. 2007) (affirming grant of summary judgment where plaintiff failed to show factual dispute as to pretext)

2.     Remaining State Law Claims

The Court has an independent duty to examine its jurisdiction at every stage of the litigation.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Because the Court had original jurisdiction over Plaintiff's Title VII claim, it had supplemental jurisdiction over the remaining state law claims as well.  28 U.S.C. § 1367.

This case is now in a fundamentally altered procedural posture given that the Court is herein granting summary judgment against Plaintiff on his federal law claim.  Plaintiff's remaining claims are all grounded in state law.  A federal court does not have independent jurisdiction over state law claims unless those state law claims "turn on substantial questions of federal law."  *Grable & Sons Metal Prods., Inc. v. Darue*, 545 U.S. 308, 312 (2005).  None of the state law claims at issue in this case turn on questions of federal law.

Federal supplemental subject matter jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350. In the interest of comity and federalism, district courts are advised against making "needless decisions of state law." *TV Commc'ns Network, Inc.*, 964 F.2d at 1028. If federal claims are dismissed before trial, leaving only issues of state law, the federal district court should ordinarily decline to exercise supplemental jurisdiction by dismissing the case without prejudice. *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie-Mellon Univ.*, 484 U.S. at 350).

The instant suit is not yet at the trial stage, so issues of judicial economy and fairness are not implicated here. *See Carnegie-Mellon Univ.*, 484 U.S. at 350. Rather, the issues of comity and federalism are at the forefront because the Court would have to decide matters of state law if it continued to exercise jurisdiction over Plaintiff's remaining claims. *See McWilliams v. Jefferson Cnty.*, 463 F.3d 1113, 1117 (10th Cir. 2006). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). The remaining causes of action either arise out of Colorado statutes, or are grounded in Colorado common law; no federal laws are

implicated by these claims.  Thus, there is not a compelling reason to maintain jurisdiction over this suit.

The Court finds that the remaining claims would be better addressed in state court.  *See Gaenzle*, 614 F.3d at 1229; *TV Commc'ns Network, Inc.*, 964 F.2d at 1028; *Thatcher Enters.*, 902 F.2d at 1478.  Accordingly, the Court declines to continue to exercise its supplemental jurisdiction over the remaining claims.

### III. PLAINTIFF'S MOTION TO AMEND

On October 12, 2021, Plaintiff filed a Motion to Amend the Amended Complaint ("Motion to Amend") (ECF No. 55), in which he requests leave to file an amended complaint which would include additional allegations supporting two claims against Defendants Denney and Feyintola.  However, neither claim is brought under federal law.  For the reasons discussed above, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims against Denney and Feyintola.  Therefore, the Motion to Amend is denied as moot.

On March 17, 2022, United States Magistrate Judge Kristen L. Mix recommended that the Motion to Amend be denied on its merits.  (ECF No. 55.) Although her recommendation is entirely sound, the Court will vacate it as moot under the circumstances since the Court no longer has jurisdiction over this case.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.    Defendants Motion for Summary Judgment (ECF No. 59) is GRANTED IN PART AND DENIED IN PART:

a.    Defendants' Motion for Summary Judgment as to Plaintiff's disability

discrimination claim brought under the ADA, 42 U.S.C. §§ 12101, *et seq.*, is GRANTED;

b.      The remaining portions of Defendants' Motion for Summary Judgment are DENIED AS MOOT;

2.    The Court DECLINES to continue to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims, thus, all such claims are DISMISSED WITHOUT PREJUDICE;

3.    The March 17, 2022 Report and Recommendation (ECF No. 69) is VACATED AS MOOT;

4.    The Clerk shall enter judgment in favor of EQHS, and against Plaintiff on Plaintiff's disability discrimination claim brought under the ADA, 42 U.S.C. §§ 12101, *et seq.*, and the Clerk shall terminate this case; and

5.    Clerk shall enter judgment in favor of Defendants Denney and Feyintola and against Plaintiff on Claim Six in conformity with this Court's September 23, 2021 Order (ECF No. 54); and

6.    Defendants shall have their costs, upon compliance with D.C.COLO.LCivR 54.1.


Dated this 2nd day of August, 2022.

BY THE COURT:

William J. Martinez
United States District Judge